UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROBERT BAGLEY,

                Civ. ___ ( )

JUDGE GARDEPHE    10 CV 1592

         Plaintiff,         COMPLAINT

     - against -          ECF CASE

J.P. MORGAN CHASE & CO.,      PLAINTIFF DEMANDS
                     A TRIAL BY JURY

         Defendant.

RECEIVED
FEB 2 2010
U.S.D.C. S.D.N.Y.
CASHIERS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiff Robert Bagley ("Bagley" or "plaintiff"), by his attorneys, Vladeck,

Waldman, Elias & Engelhard, P.C., complaining of defendant J.P. Morgan Chase ("Chase" or

"defendant"), alleges:

<div align="center">NATURE OF THE ACTION</div>

      1.    This action is brought to remedy retaliation for Bagley's opposition to

unlawful discrimination in violation of the Age Discrimination in Employment Act, as amended, 29

U.S.C. § 621 et seq. ("ADEA"); the New York State Human Rights Law, New York Executive Law

§ 296 et seq. (the "Executive Law"); and the Administrative Code of the City of New York § 8-107

et seq. (the "City Law").  Bagley was a twenty-seven year employee of Chase who was fired in

retaliation for his opposition to the age discriminatory practices that he was asked to implement

by his supervisors.

      2.    Injunctive and declaratory relief, damages, statutory penalties and other

appropriate legal and equitable relief are sought pursuant to the ADEA, the Executive Law, and the

City Law.


2010 FEB 25 P 12: 52
NYC COMMISSION
ON HUMAN RIGHTS
LAW ENFORCEMENT BUREAU

## JURISDICTION AND VENUE

3.      Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about September 25, 2009, complaining of the acts of retaliation as alleged herein.  Plaintiff received a notice of right to sue.  Plaintiff has complied fully with the administrative prerequisites of the ADEA.

4.      Pursuant to § 8-502(c) of the City Charter, prior to filing this Complaint, plaintiff served a copy of the Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

5.      Jurisdiction of this Court is proper under 29 U.S.C. § 626(c) and 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the Executive Law, and City Law pursuant to 28 U.S.C. § 1367.

6.      As the Southern District of New York is the district where the unlawful practices complained of herein occurred, venue is proper within this District.

## PARTIES

7.      Bagley is a forty-eight year old native of New York City, and was born on February 8, 1962.  He was employed by Chase in Manhattan for twenty-seven years until his employment was terminated on or about July 14, 2009.

8.      Chase is one of the largest banking institutions in the world with its principal place of business located in New York, New York.

## FACTUAL ALLEGATIONS

9.      On or about March 13, 1981, Bagley was hired by Manufacturer's Hanover Trust as a securities clerk.  He was promoted five times since 1981.  During the next

twenty years, there were a series of mergers and acquisitions -- involving Manufacturer's Hanover Trust, Chemical, Chase, and J.P. Morgan banks -- so that by December 31, 2000, the resulting entity was J.P. Morgan Chase.

10.     Bagley worked in the banking industry for over twenty-seven years, and had extensive experience in vault management as well as the transfer support operations in a bank. In his role, he managed the safekeeping of the clients' physical securities holdings, and facilitated the transfer of those assets into the bank's nominee name and depository accounts for the purpose of collecting income and dividend and the notification of corporate actions.

11.     Bagley's last title at Chase was assistant vice president in the WSS Custody Physical Processing Unit. He was specifically in charge of the Trust Vault and Transfer Support Unit. He had twenty people directly reporting to him most of whom were over fifty years of age (all of whom were over forty years of age) and had been employed at the defendant for over twenty years. In fact, at least fifty percent of his staff had been employed at the defendant (including its predecessors) for at least twenty-five years.

12.     Beginning in or about January 2009, Bagley's supervisor, Anthony Tufano ("Tufano") (approximately forty-five years of age), and Tufano's supervisor, Eric Carr ("Carr") (approximately thirty-eight years of age), began to target the older workers in his unit. Carr, in particular, made specific comments demonstrating that he was biased against older workers.

13.     For example, in or about January or February 2009, Tufano conveyed a remark that Carr made to him with reference to an email listing the years of service of several members of Bagley's staff, which was "what are you running an old age home over there?"

14.     In April 2009, Carr, when discussing a sixty year old woman on Bagley's staff, told Bagley "wouldn't you like to have a thirty year old with [her] knowledge?"

15.    In or about May 2009, at a meeting where other managers were in attendance, Carr made a statement comparing one of Bagley's managerial colleagues, who was in her mid-fifties, to other younger employees in a negative manner.

16.    Bagley believed that these statements were blatantly unfair and discriminatory.  In addition, in or about February and March 2009, both Carr and Tufano informed Bagley that they expected him to aggressively rate his staff's performance.  He understood their statements as their intention to force him to rate his staff's performance in an unjustified negative manner which would adversely affect the older workers who were reporting to him.  He was so upset by Carr's and Tufano's conduct that he asked them to either demote him to another job for less pay, or give him a separation package so that he could avoid carrying out their discriminatory plan.  Carr refused his request.

17.    In or about February or March of 2009, after Bagley asked for the demotion and/or separation package, he was in Tufano's office when Carr telephoned Tufano.  Bagley overheard Carr tell Tufano, referring to Bagley, on the speaker phone "what are we gonna do with this fucking guy."  Tufano immediately picked up the receiver and Bagley left the office.  Tufano later told Bagley that Carr said that he (Carr) was even more determined to keep Bagley in his current position at Chase, and would have Bagley "sit in the corner cutting coupons all day."

18.    In or about June 2009, Carr and Tufano asked Bagley to evaluate his staff in an unfair and arbitrary manner.  They asked him to rate at least forty-five percent (45%) of his staff at "low meets expectations" or "below expectations."  The members of his staff who received these ratings would be placed on a performance improvement plan that would more than likely result in their termination.  All of the individuals who he was asked to rate the lowest

were among the oldest and longest tenured members of his staff. In fact, the individuals who Carr and Tufano ultimately rated the lowest had been employed by the defendant for at least thirty years and, in some cases, more than forty years. Bagley believed that these individuals were being discriminated against on the basis of their age, expressed this belief to Tufano, and refused to comply with their request.

19.    Prior to this request by Carr and Tufano in or about June of 2009, Bagley's staff's performance ratings were always either "meets expectations" and in many cases, "exceeds expectations." According to Carr and Tufano, their directive to lower the staff's ratings was based on a comparison of the so called "productivity and efficiency" of Bagley's staff to younger employees in entirely different departments who allegedly performed similar job functions.

20.    On or about July 2, 2009, Bagley complained to defendant's human resources department that the performance review process which Carr and Tufano were insisting that he implement was biased against the older workers and being utilized as a way to remove them from their positions. The human resources department supported Carr and Tufano.

21.    Prior to Bagley's refusal to comply with Carr's and Tufano's directive, he received good performance ratings in his performance evaluations. He was also never written up, failed an audit, or subject to any disciplinary action in his twenty-seven years at Chase.

22.    After Bagley refused to follow Carr's and Tufano's directives, his employment was terminated in or about July 2009 for refusing to carry out their discriminatory plan.

<u>FIRST CAUSE OF ACTION</u>
ADEA

23.     Plaintiff repeats and realleges ¶¶ 1-22 of this Complaint as if set forth herein.

24.     By the acts and practices described above, defendant has retaliated against plaintiff for his opposition to unlawful discrimination in violation of the ADEA.

25.     Defendant knew that its actions constituted unlawful retaliation or showed reckless disregard for plaintiff's statutorily protected rights.  These violations are willful within the meaning of the ADEA.

26.     Plaintiff is now suffering irreparable injury and monetary damage from defendant's retaliatory conduct and will continue to do so unless and until the Court grants relief.

<u>SECOND CAUSE OF ACTION</u>
EXECUTIVE LAW

27.     Plaintiff repeats and realleges ¶¶ 1-26 of this Complaint as if set forth herein.

28.     By the acts and practices described above, defendant has retaliated against plaintiff for his opposition to unlawful discrimination in violation of the Executive Law.

29.     Plaintiff is now suffering irreparable injury and monetary damage from defendant's retaliatory conduct and will continue to do so unless and until the Court grants relief.

<u>THIRD CAUSE OF ACTION</u>
CITY LAW

30.     Plaintiff repeats and realleges ¶¶ 1-29 of this Complaint as if set forth herein.

31.     By the acts and practices described above, defendant has retaliated against plaintiff for his opposition to unlawful discrimination in violation of the City Law.

32     Defendant acted with malice and/or reckless indifference to plaintiff's statutorily protected rights.

33.     Plaintiff is now suffering irreparable injury and monetary damage from defendant's retaliatory conduct and will continue to do so unless and until the Court grants relief.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

(a)     declaring the acts and practices complained of herein are in violation of the ADEA, the Executive Law, and the City Law;

(b)     enjoining and permanently restraining these violations of the ADEA, the Executive Law, the and City Law;

(c)     directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d)     directing defendant to reinstate plaintiff to the position he would have occupied but for defendant's unlawful conduct and making him whole for all earnings he would have received but for defendant's unlawful conduct, including, but not limited to, wages, bonuses, and other lost benefits;

(e)     directing defendant to pay plaintiff an additional amount as liquidated damages, as provided by Section 7(b) of the ADEA, 29 U.S.C. § 626(b);

(f)     directing defendant to pay plaintiff an additional amount as punitive damages pursuant to City Law;

(g)     directing defendant to pay plaintiff compensatory damages for his emotional distress;

264600 v1

(h)    awarding plaintiff such interest as is allowed by law and damages to compensate for any adverse tax consequences of any award;

(i)    awarding plaintiff his reasonable attorney's fees and costs; and

(j)    granting such other and further relief as this Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.

Dated: New York, New York
       February 25, 2010

<div style="margin-left:40%">

VLADECK, WALDMAN, ELIAS &
ENGELHARD, P.C.

By:    _Milton L. Williams Jr._

Milton L. Williams, Jr.
Attorneys for Plaintiff
1501 Broadway, Suite 800
New York, New York  10036
(212) 403-7300

</div>