UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
              :
ROBERT BAGLEY,    :
              :
         Plaintiff,   :  10 Civ. 1592 (PGG)
              :
   -against-   :  ECF Case
              :
J.P. MORGAN CHASE & CO.,   :
              :
         Defendant.   :
              :
------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE* TO BAR REFERENCE TO THE DELETION OF PLAINTIFF'S ELECTRONIC MAILBOX**


SEYFARTH SHAW LLP

Robert Whitman
John DiNapoli
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

JPMORGAN CHASE LEGAL &
COMPLIANCE DEPARTMENT

Stacey L. Blecher
One Chase Manhattan Plaza, 26th Floor
New York, New York 10081
(212) 552-3814

*Attorneys for Defendant*

**PRELIMINARY STATEMENT**

Pursuant to Rules 401, 402, and 403 of the Federal Rules of Evidence, Defendant respectfully seeks an order *in limine* to bar Plaintiff from introducing any evidence regarding, or otherwise making any reference to at trial, the deletion of his electronic mailbox. As set forth below, the deletion occurred as the result of a change in email platforms and the recycling of data within the new platform, all of which occurred before Defendant was on notice of possible litigation by Plaintiff. Once on notice, Defendant promptly took steps to secure and preserve emails and other electronically stored information potentially relevant to Plaintiff's allegations, and recovered, among other things, thousands of pages of emails sent to or from Plaintiff's mailbox before his termination. Moreover, Plaintiff cannot identify—or even suggest the existence of—any specific deleted email that would relate in any way to this case, let alone provide support for his claims.

**FACTUAL BACKGROUND**

On July 2, 2009, Plaintiff received a written warning. (Pl.'s Opp. to Def.'s Statement of Undisputed Facts & Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Pl.'s 56.1") ¶ 477) During an internal discussion as the warning was being prepared, an employee in Defendant's Employee Relations department stated that issuing written warnings was a prudent practice because, in the event the employee was later terminated, the warning would show that the employee was treated fairly and would help ensure that the termination was "[l]egally defensible." (Pl.'s 56.1 Ex. 77; Jennifer Wheatley Dep. 158:23-159:20, Feb. 7, 2011[1])

---

[1] Copies of all depositions cited to in this memorandum of law were included in Plaintiff's Appendix to his Opposition to Defendant's 56.1 Statement. (ECF No. 36) Ms. Wheatley's deposition transcript can be found at ECF No. 36-9, Anthony Tufano's at ECF No. 36-3, and Mariela Recio's at ECF No. 36-10.

On July 14, 2009, Defendant terminated Plaintiff's employment. (Def.'s Statement Pursuant to Local Civil Rule 56.1(a) of the Material Undisputed Facts ¶ 2; Pl.'s 56.1 ¶ 2) Later that day, Plaintiff contacted Mariela Recio of Employee Relations. (Pl.'s 56.1 ¶ 576; Def.'s Response to Pl.'s Rule 56.1 Statement ("Def.'s 56.1") ¶ 576) During this conversation, Plaintiff did not state that he felt he was terminated in retaliation for his alleged complaints regarding age discrimination. (Mariela Recio Dep. 315:11-22, Feb. 16, 2011) The issue of age was not discussed at all during this conversation, and Plaintiff does not contend otherwise. (Recio Dep. 315:11-316:6; Pl.'s 56.1 ¶¶ 576-80) By Plaintiff's own admission, he never made any written complaint about discrimination during his employment. (Pl.'s 56.1 ¶ 400; Def.'s 56.1 ¶ 400)

At the end of the conversation, Plaintiff told Recio that he intended to "pursue with an attorney." (Pl.'s 56.1 ¶ 580) Recio interpreted this statement to mean that Plaintiff would contact an attorney because he believed he should not have been terminated for refusing to engage in the performance management process. (Recio Dep. 312:17-24) Because Plaintiff did not raise a valid legal concern during this conversation, Recio did not inform Defendant's legal department about the conversation. (Recio Dep. 321:19-322:16; 323:16-24) In her view, Plaintiff's reference to an attorney was similar to statements made by many terminated employees and was not a reason to involve company lawyers. (*See* Recio Dep. 321:3-18)

On August 4, 2009, Plaintiff retained the law firm of Vladeck, Waldman, Elias & Engelhard, P.C. (Pl.'s 56.1 ¶ 63) Plaintiff's counsel contacted Defendant on his behalf on August 10, 2009. (Pl.'s 56.1 ¶ 618; Def.'s 56.1 ¶ 618) Defendant placed a litigation hold on all documents potentially relating to Plaintiff's allegations on August 13, 2009. (Pl.'s 56.1 ¶ 619; Def.'s 56.1 ¶ 619)

On May 2, 2009, approximately two-and-a-half months prior to Plaintiff's termination, Defendant migrated Plaintiff's email platform from Lotus Notes to Microsoft Exchange. (Pl.'s 56.1 ¶ 613; Def.'s 56.1 ¶ 613)  Defendant maintains a backup of electronically stored information on the Lotus Notes platform. (Pl.'s 56.1 Ex. 109 ¶ 3-4; *see* Pl.'s 56.1 ¶ 614; Def.'s 56.1 ¶ 614)  Defendant does not maintain a similar backup for the Microsoft Exchange platform. Rather, Microsoft Exchange data is stored for fifteen days, after which it is recycled, *i.e.*, written over with new data. (Pl.'s 56.1 Ex. 109 ¶ 6)  As a result, Defendant was able to recover Plaintiff's emails sent and received before May 3, 2009, because he was using Lotus Notes until that date, but was not able to recover Plaintiff's emails after May 3, 2009, because he was using Microsoft Exchange.

By the time Plaintiff's counsel contacted Defendant on August 10, 2009, the data on the Microsoft Exchange platform had already been recycled. (Pl.'s 56.1 ¶ 616; Def.'s 56.1 ¶ 616) But not all of the Microsoft Exchange data was lost.  Defendant did recover emails that Plaintiff sent and received during this time from the mailboxes of other employees who were still using Lotus Notes.  These totaled more than 3,130 pages of emails. (Pl.'s 56.1 ¶ 624; Def.'s 56.1 ¶ 624)

## ARGUMENT

In order to establish that spoliation of evidence occurred, Plaintiff must prove (1) that Defendant had control over the evidence and an obligation to preserve it at the time it was destroyed; (2) that it acted with a culpable state of mind; and (3) that the missing evidence was relevant to Plaintiff's claim or defense.  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (citation and quotations omitted).

Plaintiff is unable to establish any of these elements.  As discussed below, Defendant did not have a duty to preserve Plaintiff's electronic mailbox when the data was recycled (Part I,

3

*infra*), Defendant did not act with a culpable state of mind when recycling the data (Part II, *infra*), and there is no basis to conclude that missing emails (if any) would support Plaintiff's claim (Part III, *infra*).  As a result, any evidence of or reference to the deletion of emails at trial should be barred (Part IV, *infra*).

**I.      Defendant Did Not Have an Obligation to Preserve Plaintiff's Electronic Mailbox When the Data was Recycled.**

The duty to preserve evidence arises when a party reasonably anticipates litigation. *See Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001).  General concerns that an employee might sue are insufficient to trigger this duty. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("Merely because one or two employees contemplate the possibility that a fellow employee might sue does not generally impose a firm-wide duty to preserve.")  Rather, the threat of litigation must be genuine, concrete, and recognized as such by everyone involved.  *See id.*; *Curcio v. Roosevelt Union Free Sch. Dist.*, Cv. No. 10-5612, 2012 WL 3236645, at *5-6 (E.D.N.Y. Aug. 10, 2012).

Plaintiff's conduct prior to his termination was insufficient to put Defendant on reasonable notice of the possibility of future litigation.  Plaintiff asserts that he complained about age discrimination to his supervisor and an employee in Defendant's Employee Relations department.  (Pl.'s 56.1 ¶¶ 378-404; 496-501)  But both these individuals testified unambiguously during their depositions that Plaintiff never did so.  (Anthony Tufano Dep. 87:14-24, 88:6-14, 97:12-98:12, 101:12-15, 117:2-17, Feb. 4, 2011; Recio Dep. 210:5-16, 256:7-258:3, 315:11-316:6)  And even assuming *arguendo* that Plaintiff did so complain, such conduct is still insufficient to put Defendant on reasonable notice of impending litigation. *See Zubulake*, 220 F.R.D. at 217.

Similarly, there is no basis to infer that Defendant was on notice because one of its employees wrote "legally defensible" in connection with giving Plaintiff a written warning. Plaintiff does not contend that this employee knew about his purported complaints of age discrimination or was aware of any other allegations that would foster a specific concern of impending litigation. *See id.* On the contrary, most sophisticated employers are aware of the possibility of being sued when they fire someone; ensuring that terminations are "legally defensible" is a prudent business practice, not a trigger for preservation of the employee's emails.

Plaintiff's conduct immediately following his termination was also insufficient to trigger the duty to preserve. After being terminated, Plaintiff informed Recio that he would "pursue with an attorney." (Pl.'s 56.1 ¶ 580) But Plaintiff did not mention age discrimination or any other legal claim during this conversation. Rather, Recio thought Plaintiff meant that he would consult with an attorney because he felt that his refusal to do staff evaluations did not warrant termination, not that he intended to sue. (Recio Dep. 312:17-24, 321:3-322:25) Plaintiff's email later that day to a personal friend, in which he stated that he would "see some lawyers to see if I can least [*sic*] get some sort of severance," (Def.'s 56.1 Ex. 22, ECF No. 30-24), reinforces the conclusion that Plaintiff did not intend to commence litigation but simply wanted to discuss his concerns with a lawyer and possibly obtain a severance payment.[2]

Comments by terminated employees about consulting with an attorney are not uncommon. Many such employees have stated that they intend to see a lawyer during

---

[2] Pursuant to the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f)(1)(E), employers are required, *inter alia*, to advise employees in writing "to consult with an attorney prior to executing" an agreement to waive rights under the Age Discrimination in Employment Act. To the extent Plaintiff contends that his comment to Recio triggered a duty to preserve, he is effectively taking the untenable position that an employer is required to impose a litigation hold any time it presents an employee with such a waiver agreement.

5

conversations with Employee Relations. (*See, e.g.*, Recio Dep. 321:3-18)  But most are not heard from again.  Saying that one is going to consult or "pursue" with an attorney is a far cry from giving notice that a lawsuit or other legal claim is forthcoming.  In light of Recio's past experience in similar circumstances and the nature of her conversation with Plaintiff, it was reasonable for her to think that litigation would not occur.

When Defendant was given notice that a lawsuit was a real possibility, it acted promptly to preserve electronically stored information.  Plaintiff's counsel sent a letter to Defendant on August 10, 2009, notifying Defendant of Plaintiff's allegations.  (Pl.'s 56.1 ¶ 618)  Defendant issued a litigation hold within days of receiving this letter.  (Pl.'s 56.1 ¶ 619; Def.'s 56.1 ¶ 619 (the litigation hold was in place by August 13, 2009))  Even this was arguably sooner than a litigation hold was required, since Plaintiff, despite retaining counsel, had not yet advanced any legal claim.  Indeed, Defendant imposed the litigation hold a month-and-a-half before Plaintiff filed a charge of discrimination with the EEOC.  (Pl.'s 56.1 ¶ 591 (Plaintiff filed his EEOC charge on September 25, 2009))  *See Curcio*, 2012 WL 3236645, at *6.

**II.   Defendant Did Not Act With a Culpable State of Mind When Plaintiff's Mailbox was Recycled.**

In order to establish spoliation of evidence, Plaintiff must prove that Defendant acted with a culpable state of mind when destroying or losing the evidence.  *Pension Comm. v. Banc of Am. Secs., LLC*, 685 F. Supp. 2d 456, 467 (S.D.N.Y. 2010), *abrogated on other grounds by Chin v. Port Auth.*, 685 F.3d 135, 162 (2d Cir. 2012).  In general, "state of mind" can be divided into three categories: negligence, gross negligence, and willfulness.  *Pension Comm.*, 685 F. Supp. 2d at 463-64.  Negligence occurs when a party fails to meet "its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding."  *Id.* at 464.  Gross negligence occurs when one fails to exercise "even that care which a careless person would use."

*Id.* (citation and quotation omitted).  And willfulness involves an intentional act "of an unreasonable character in disregard of a known or obvious risk."  *Id.*  (citation and quotation omitted).  None of these descriptions applies to Defendant.

The data in Plaintiff's electronic mailbox was recycled approximately fifteen days after his termination pursuant to Defendant's internal data policies.  No other electronic information was deleted.  After receiving a communication from Plaintiff's attorneys, Defendant promptly preserved the electronic mailboxes of witnesses he had identified by Plaintiff who were still employed by Defendant.  The deletion of any data in Plaintiff's electronic mailbox was not "willful" because it occurred under data policies that apply to all of Defendant's employees who use the Microsoft Exchange platform.  (*See* Pl.'s 56.1 Ex. 109 ¶ 6)  Similarly, there was no negligence (let alone gross negligence) because Defendant did not have a duty to preserve electronically stored information at this time.  Part I, *supra*.  As a result, Plaintiff cannot establish that Defendant acted with a culpable state of mind.

## III. Any Lost Data Was Not Relevant to Plaintiff's Claim and He Was Not Prejudiced in Any Event.

Even if Plaintiff could show that Defendant acted negligently in deleting his electronic mailbox, he still must prove that (1) the missing emails would have been relevant to his claim and (2) he was prejudiced as a result.  *Pension Comm.*, 685 F. Supp. 2d at 468.  This requires "extrinsic evidence tending to show that the destroyed e-mails would have been favorable to [his] case."  *Id.* (citation and quotation omitted).  Here, Plaintiff is unable to meet this burden.

First, Plaintiff admits that he never complained about age discrimination in writing (Pl.'s 56.1 ¶ 400), so there is no reason to believe that any unfound message in his mailbox would support his contention of having made a complaint.

Second, because of the preservation of the mailboxes of other individuals in response to the litigation hold, Defendant was able to recover approximately 3,130 pages of emails sent or received by Plaintiff during the period between May 3, 2009 (when the migration occurred) and July 14, 2009 (the date Plaintiff's employment ended). (Pl.'s 56.1 ¶ 624; Def.'s 56.1 ¶ 624) While this may not encompass every message in Plaintiff's mailbox during that period, it does contain emails Plaintiff sent to or received from the key employees with respect to his termination and alleged complaints about discrimination, and thus likely encompasses all or nearly all of the emails in Plaintiff's mailbox of conceivable relevance here.

Third, and perhaps most importantly, Plaintiff cannot identify *any* specific email that he believes was relevant to his claim but was lost. (*See* Pl.'s Br. Opposing Sum. J. 6-10, ECF No. 33) Plaintiff cannot simply hypothesize that relevant emails were deleted. *Pension Comm.*, 685 F. Supp. 2d at 468. Rather, he must come forward with extrinsic evidence proving this theory. Despite being in a position to know what emails he sent and received during that time, he has not identified, even in general terms, a single relevant message that was in his mailbox but not produced during discovery because of the recycling of his mailbox. Under the circumstances, there is no basis to presume that any deleted messages would have been relevant or that their absence has prejudiced Plaintiff in any way. *See Chin*, 685 F.3d at 162.

**IV.     Evidence Concerning the Deletion of Emails Should be Excluded.**

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). This Court can exclude evidence pursuant to motions *in limine* under its inherent authority to manage the course of a trial. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Courts are also permitted to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. Unfair prejudice occurs when

there is an "undue tendency to suggest decision on an improper basis." Fed. R. Evid. 403 (advisory committee note). Confusing or misleading the jury generally occurs when the evidence sought to be excluded would raise a side issue "distract[ing] the jury from the important issues." 2 Weinstein's Federal Evidence § 403.05(1) (2d ed. 2012).

Here, the deletion of Plaintiff's mailbox is irrelevant to his claim of retaliation. First, because Plaintiff acknowledges that he never complained about alleged discrimination in writing, and does not suggest that any other pertinent communications took place in emails that have not been recovered, there is no basis to surmise that his mailbox contained any relevant but missing emails. Second, no one involved in the decision to terminate Plaintiff's employment was responsible for the recycling of his mailbox, which was the result of Defendant's policy to recycle Microsoft Exchange data every fifteen days.

Even if this Court were to determine that the recycling is relevant, it should still exclude any evidence or other discussion of it at trial. Testimony regarding the deletion of Plaintiff's mailbox could improperly suggest to the jury that Defendant engaged in impropriety or a "cover up." Such an inquiry would also necessitate a response from Defendant with testimony about its data policies. This side issue would consume trial time and distract the jury from the core issues in dispute.

## CONCLUSION

For the foregoing reasons, Plaintiff should be precluded from introducing any evidence or otherwise making any reference at trial relating to the deletion of his electronic mailbox following his termination.

Dated: New York, New York  
       September 24, 2012

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ Robert Whitman  
Robert Whitman  
John DiNapoli  
620 Eighth Avenue  
New York, New York 10018  
(212) 218-5500  
rwhitman@seyfarth.com  
jdinapoli@seyfarth.com

JPMORGAN CHASE LEGAL & COMPLIANCE DEPARTMENT

By: /s/ Stacey L. Blecher  
Stacey L. Blecher  
One Chase Manhattan Plaza, 26th Floor  
New York, New York 10081  
(212) 552-3814  
stacey.l.blecher@chase.com

*Attorneys for Defendant*