UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

ROBERT BAGLEY,                                    ECF CASE

                Plaintiff,                Case No. 10 Civ. 1592 (PGG) (RLE)

     - against -

JPMORGAN CHASE & CO.,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

=================================================================

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE

=================================================================

VLADECK, WALDMAN, ELIAS &
  ENGELHARD, P.C.
 Attorneys for Plaintiff
 1501 Broadway, Suite 800
 New York, New York 10036
 (212) 403-7300

Of Counsel:
    Milton L. Williams, Jr.
    Jeremiah Iadevaia

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ...................................................................................................................2

    I.      AN ADVERSE INFERENCE IS WARRANTED ...............................................2

           A.      Chase's Duty to Preserve Documents Arose Before
                  Chase Destroyed Plaintiff's Email ............................................................3

           B.      Chase's Deletion of Bagley's Email Was Grossly Negligent.....................6

           C.      Chase Destroyed Emails that are Relevant and Favorable
                  to Plaintiff ...............................................................................................7

    II.     PLAINTIFF SHOULD BE PERMITTED TO INTRODUCE
          EVIDENCE OF ALLEGED AGE DISCRIMINATION ....................................10

           A.      Evidence of Age Discrimination Shows that Plaintiff Had a
                  Reasonable, Good Faith Basis to Complain of Discrimination................10

                  1.      Carr's Age-Bias Comments ...........................................................11

                  2.      Other Evidence of Carr's Age-Bias ...............................................12

            B.      Evidence of Chase's Discrimination Against Older Employees
                    Is Admissible to Show Chase's Retaliatory Motive .................................15

            C.      Evidence of Age Discrimination Is Relevant to
                    Plaintiff's Punitive Damages Claim Under the City Law .........................16

            D.      Plaintiff's Summary Charts Are Admissible Under
                    Fed. R. Evid. 1006 ..................................................................................17

CONCLUSION ...........................................................................................................188

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

Aman v. Cort Furniture Rental Corp.,
      85 F.3d 1074 (3d Cir. 1996) ................................................................................................. 15

Beechwood Restorative Care Ctr. v. Leeds,
      856 F. Supp. 2d 580 (W.D.N.Y. 2012) .................................................................................. 18

Byrnie v. Town of Cromwell, Bd. of Educ.,
      243 F.3d 93 (2d Cir. 2001) ............................................................................................... 3, 4, 7

Chan v. Triple 8 Palace, Inc.,
      No. 03 Civ. 6048, 2005 WL 1925579 (E.D.N.Y. Aug. 11, 2005) .............................. 6, 8, 9, 10

Chin v. Port Authority of NY & NJ,
      685 F.3d 135 (2d Cir. 2012) ............................................................................................. 6, 10

Chopra v. General Electric Co.,
      527 F. Supp. 2d 230 (D. Conn. 2007) ................................................................................... 15

Danzer v. Norden Sys.,
      151 F.3d 50 (2d Cir. 1998) .................................................................................................... 11

DMAC LLC v. City of Peekskill,
      No. 09 Civ. 5093 (GAY), 2012 WL 4459290 (S.D.N.Y. Sept. 26, 2012) ........................... 3, 7

Doe v. Norwalk Cmty. Coll.,
      248 F.R.D. 372 (D. Conn. 2007) ....................................................................................... 4, 5

Fayemi v. Hambrecht & Quist, Inc.,
      174 F.R.D. 319 (S.D.N.Y. 1997) ............................................................................................ 4

Golia v. Leslie Fay Co, Inc.,
      No. 01 Civ. 1111, 2003 WL 21878788 (S.D.N.Y. Aug. 7, 2003) ................................. 2, 8, 10

Gorzynski v. JetBlue Airways,
      596 F.3d 93 (2d Cir. 2010) ............................................................................................. 10, 11

In re NTL, Inc. Sec. Litig.,
      244 F.R.D. 179 (S.D.N.Y. 2007) ..................................................................................... 6, 7, 9

Kauffman v. Maxim Healthcare Services, Inc.,
      509 F. Supp. 2d 210 (E.D.N.Y. 2007) ................................................................................... 16

Kessler v. Westchester Cnty. Dep't of Soc. Servs.,
    461 F.3d 199 (2d Cir. 2006) ................................................................................... 10

Kravtsov v. Town of Greenburgh,
    No. 10 Civ. 3142 (CS), 2012 WL 2719663 (S.D.N.Y. July 9, 2012) ....................................... 6

Kronisch v. United States,
    150 F.3d 112 (2d Cir. 1998) ................................................................................... 3, 4, 5

Levin v. Analysis & Technology, Inc.,
    960 F.2d 314 (2d Cir. 1992) ................................................................................... 11

MacMillan v. Millenium Broadway Hotel,
    No. 09 CIV. 6053 (PGG), 2012 WL 2105832 (S.D.N.Y. June 11, 2012) ....................... 16, 17

Malin v. XL Capital Ltd.,
    499 F. Supp. 2d 117 (D. Conn. 2007) ......................................................................... 17

Manzo v. Sovereign Motor Cars, Ltd.,
    No. 08 Civ. 1229 (JG)(SMG), 2010 WL 1930237 (E.D.N.Y. May 11, 2010)....................... 16

O'Reilly v. Marina Dodge, Inc.,
    No. 10 Civ. 2977, 2011 WL 1897489 (S.D.N.Y. May 19, 2011) ........................................ 12

Residential Funding Corp. v. DeGeorge Fin. Corp.,
    306 F.3d 99 (2d Cir. 2002) ................................................................................... 6, 7, 8

Rosioreanu v. City of New York,
    No. 07 Civ. 2925 (LB), 2012 WL 2792893 (S.D.N.Y. July 9, 2012) .................................... 11

Shaffer v. RWP Grp., Inc.,
    169 F.R.D. 19 (E.D.N.Y. 1996)................................................................................... 4

Terry v. Ashcroft,
    336 F.3d 128 (2d Cir. 2003) ................................................................................... 16

Turner v. Hudson Transit Lines, Inc.,
    142 F.R.D. 68 (S.D.N.Y. 1991)................................................................................... 9

United States v. Yousef,
    327 F.3d 56 (2d Cir. 2003) ................................................................................... 17

Zubulake v. UBS Warburg LLC ("Zubulake I"),
    220 F.R.D. 212 (S.D.N.Y. 2003)................................................................................... 5, 7

Zubulake v. UBS Warburg LLC ("Zubulake II"),
    229 F.R.D. 422 (S.D.N.Y. 2004)................................................................................... 9

Sᴛᴀᴛᴜᴛᴇs ᴀɴᴅ Rᴜʟᴇs

Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. .................................................... 1

Federal Rule of Evidence 1006 ......................................................................................................... 17

New York Executive Law § 296 et seq. ............................................................................................ 1

Administrative Code of the City of New York § 8-107 et seq. ................................................. 1, 16

PRELIMINARY STATEMENT

Plaintiff Robert Bagley ("Bagley" or "plaintiff") submits this memorandum of law in opposition to the Motions In Limine of defendant JPMorgan Chase & Co. ("Chase" or "defendant").  Plaintiff has alleged that defendant retaliated against plaintiff for his complaints of age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), the New York Executive Law § 296 et seq. (the "State Law" or "NYSHRL"), and the Administrative Code of the City of New York § 8-107 et seq. (the "City Law" or "NYCHRL").

In its Memorandum of Law in Support of Its Motion In Limine, filed September 24, 2012 ("Def. Limine Mem."), defendant opposes plaintiff's request for a spoliation instruction. The evidence shows, however, that Chase deleted key documents – plaintiff's email inbox – after it had a duty to preserve materials; that Chase's actions were grossly negligent; and that the documents defendant destroyed would have been relevant and favorable to plaintiff's claims.[1]

In addition, defendant argued in its Trial Memorandum that plaintiff should not be permitted to introduce evidence of alleged age discrimination.  (Def. Trial Mem. at 10-12)[2] Contrary to defendant's argument, evidence of age discrimination goes to a required element of Bagley's retaliation claim – a reasonable, good faith basis to complain of discrimination.   In addition, the evidence of age discrimination, as the Court held, is relevant to pretext.  Finally, the evidence of age discrimination supports plaintiff's claim for punitive damages under the City Law.  Defendant's Motions In Limine are attempts to evade defendant's responsibility for failing to preserve documents and cover up substantial evidence of age discrimination.   Defendant's

---

[1]    Defendant also argues in its Trial Memorandum, filed October 1, 2012 ("Def. Trial Mem.") that an adverse inference instruction regarding destruction of documents is not warranted.  (Def. Trial Mem. at 12-14)  To the extent defendant raises new arguments in its Trial Memorandum, plaintiff addresses them herein.

[2]    As noted above, Chase raised this argument in its Trial Memorandum and not its motion in limine.  Plaintiff addresses defendant's argument here because defendant has asked the Court to exclude evidence.

Motions In Limine should therefore be denied.

ARGUMENT

I.     AN ADVERSE INFERENCE IS WARRANTED

      Chase fired Bagley on July 14, 2009.  (Pl. 56.1 ¶ 564)[3]  Although defendant should have anticipated litigation on the day plaintiff was fired, defendant waited until a month later on August 13, 2009 to place a litigation hold or instruct key employees to preserve documents related to Bagley's claims.  (Id. ¶¶ 619, 621-23)[4]  During this time, Chase destroyed plaintiff's email inbox and the associated emails created during the period critical to this lawsuit May 3 and July 14, 2009 -- when plaintiff continued to engage in protected activity, Chase retaliated against him, and he was fired.  (Pl. 56.1 ¶¶ 312-580, 616)    Accordingly, plaintiff is entitled to an adverse inference.

      The Court may allow, as a sanction against the spoliator, an adverse inference that the destroyed documents would have been helpful to the non-spoliating party.  "This sanction . . . serv[es] the functions of placing the 'risk of erroneous judgment on the party that wrongfully created the risk,' and 'restoring the prejudiced party to the same position he would have been in absent of the wrongful destruction of evidence.'"  Golia v. Leslie Fay Co., Inc., No. 01 Civ. 1111, 2003 WL 21878788, at *10 (S.D.N.Y. Aug. 7, 2003) (quoting Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998)).

      "A party moving for sanctions for spoliation of evidence carries the burden to

---

[3]     Plaintiff's Opposition to Defendant's Statement of Undisputed Facts and Plaintiff's Statement of Material Facts Pursuant to Local Civil Rule 56(a)(2) is referenced herein as "Pl. 56.1."   All deposition transcripts cited herein are attached to Plaintiff's Appendix to His Opposition to Defendant's 56.1 Statement.

[4]     Defendant alleges (Def. Limine Mem. at 3) that plaintiff's counsel contacted defendant on his behalf on August 10, 2009.  While this is accurate, plaintiff's counsel had spoken to defendant earlier, on August 7, 2009 regarding Bagley's claims.  (See Affirmation of Milton L. Williams in Opposition to Defendant's Motions In Limine, dated October 10, 2012 ("Williams Limine Affirmation") ¶ 2)

prove: (1) that the spoliating party had control over the evidence in question and a duty to preserve it at the time it was destroyed, lost, or significantly altered; (2) that said evidence was destroyed, lost, or significantly altered with a culpable state of mind; and (3) that said evidence was relevant to the moving party's claims or defenses." DMAC LLC v. City of Peekskill, No. 09 Civ. 5093 (GAY), 2012 WL 4459290, at *3 (S.D.N.Y. Sept. 26, 2012) (citing Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002)); see Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 109 (2d Cir. 2001).

     A.     Chase's Duty to Preserve Documents Arose
             Before Chase Destroyed Plaintiff's Email

Defendant had a duty to preserve documents relevant to plaintiff's legal claims at least by July 14, 2009, the date Chase fired Bagley. A duty to preserve documents arises prior to the commencement of litigation "when a party should have known that the evidence may be relevant to future litigation." Byrnie, 243 F.3d at 107 (quoting Kronisch, 150 F.3d at 126). "The obligation to preserve evidence even arises prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced." Kronisch, 150 F.3d at 126.

By the time Chase fired plaintiff, there is evidence that several key individuals -- including Bagley's manager, Anthony Tufano ("Tufano"); Tufano's manager, Eric Carr ("Carr"); and Mariela Recio ("Recio") and Jennifer Wheatley ("Wheatley") of Chase's Employee Relations department -- were aware that Bagley was likely to pursue legal claims against Chase in connection with his firing.[5] Between December 2008 and July 14, 2009, plaintiff repeatedly complained of age discrimination to Tufano and later to Recio, and objected to the performance review process. (Pl. 56.1 ¶¶ 378-404, 496-501) On June 24, 2009, Carr called Employee

---

[5]      Bagley worked for Chase and its predecessors for approximately 27 years before he was fired on July 14, 2009. (Pl. 56.1 ¶¶ 1, 564) When he was fired, Bagley was an Assistant Vice President. He managed a small group of employees in Chase's Treasury Securities Services ("TSS")/Worldwide Securities Services ("WSS") business. (Id. ¶¶ 97-100) At the time of his dismissal, Bagley reported to Tufano, Executive Director. (Id. ¶ 113) Tufano reported to Carr, Executive Director and WSS Operations Manager. (Id. ¶¶ 117-20)

Relations and notified Wheatley that he wanted to fire plaintiff.  (Id. ¶¶ 452-60)  On June 30, 2009, Wheatley advised Carr to issue plaintiff a written warning before firing him, to make his firing "legally defensible."  (Id. ¶¶ 462-67)  In addition, the undisputed evidence shows that on July 14, 2009 -- after Bagley learned that Chase had fired him -- he called Employee Relations and told Recio that he intended to retain a lawyer regarding his dismissal.  (Id. ¶¶ 576-80)

   The evidence shows that Chase had ample notice of this litigation beginning as early as December 2008, and indeed took steps to sanitize its actions in case Bagley decided to sue.  Defendant cannot plead ignorance where, as here, the specter of a lawsuit pervaded the discussions surrounding plaintiff's firing.  See Byrnie, 243 F.3d at 108 (arguably defendant "had notice of potential litigation" when it received a FOIA request seeking materials related to the hiring process and at the time of a meeting during which plaintiff had expressed concerns about the hiring process); Doe v. Norwalk Cmty. Coll., 248 F.R.D. 372, 377 (D. Conn. 2007) (finding that duty to preserve had arisen several months before plaintiff's lawsuit "when a meeting was held between [a dean of the university and two professors] regarding the . . . incident [involving plaintiff], which indicate[d] to the court that, as of that date [defendant] was aware of the [plaintiff's ] allegations of sexual assault by [individual defendant]"); Shaffer v. RWP Grp., Inc., 169 F.R.D. 19, 24 (E.D.N.Y. 1996) (even though defendants were not served with the complaint until September 1993, they knew or should have known that certain evidence was relevant as early as July 1993); Fayemi v. Hambrecht & Quist, Inc., 174 F.R.D. 319, 326 (S.D.N.Y. 1997) (defendant was on notice of its obligation to preserve potentially relevant evidence when plaintiff informed his boss that he intended to sue for discrimination).

   Defendant erroneously argues that these events were insufficient to place defendant on notice that Bagley was likely to commence litigation.  Defendant bases its argument on the following: (1) Bagley never complained of age discrimination (Def. Limine Mem. at 4); (2) Wheatley's "legally defensible" note simply reflected "a prudent business

practice" that Chase should proceed cautiously when firing an employee because, as a general matter, employees who have been fired may sue (Def. Limine Mem. at 5); and (3) Recio did not take seriously Bagley's statement that he intended to retain a lawyer after his firing because he failed to set forth a legal claim and such statements are not uncommon (Def. Limine Mem. at 5-6).[6]  Defendant's argument, however, improperly asks the Court to construe all facts and draw all inferences in its favor.  At this stage, whether Chase had a duty to preserve documents at the time of plaintiff's firing at least presents a question of fact and should be determined by the jury.  See Kronisch, 150 F.3d at 127 ("At the very least, the district court cannot rule out the possibility that a reasonable jury would find that [individual defendants] feared the prospect of litigation against them individually, and that this prospect may have played a role in their decision to order the destruction of [certain] files.").

Tellingly, defendant does not believe that it had a duty to preserve documents even after it received an email from plaintiff's counsel regarding plaintiff's allegations.  (Def. Limine Mem. at 6)  Defendant's position is both erroneous and reveals defendant's fundamental misunderstanding of its obligations.  See Norwalk Cmty. Coll., 248 F.R.D. at 377 ("The court strongly disagrees with defendants" argument that the duty to preserve did not arise until "well after" plaintiff filed her lawsuit; "Under the most generous reading of Byrnie, the court finds that the duty to preserve certainly arose no later than September 2004, when [plaintiff's] counsel sent

---

[6]     Defendant argues mistakenly that even if plaintiff did complain about age discrimination to Recio and Tufano, such complaints would have been insufficient to trigger defendant's obligation to preserve documents.  (Def. Limine Mem. at 4)  Defendant cites Zubulake v. UBS Warburg LLC ("Zubulake I"), 220 F.R.D. 212, 217 (S.D.N.Y. 2003).  Zubulake, however, supports plaintiff's argument that defendant had a duty to preserve documents by the date of his firing.  In that case, the Court held that "relevant people at [defendant] anticipated litigation" before the EEOC complaint.  Id.  The Court based this finding on an email among several managers and human resources employees about plaintiff and her employment status.  Id.  Similarly, a jury here could find that Bagley's managers (Tufano and Carr) and Employee Relations representatives (Recio and Wheatley) were aware of Bagley's potential lawsuit and should have anticipated litigation.

the defendants a demand letter indicating [plaintiff's] intent to sue.").  Moreover, while defendant states that it issued a litigation hold three days after the receiving the letter, defendant fails to acknowledge that it waited almost one week to do so after speaking with plaintiff's counsel regarding Bagley's legal claims on August 7, 2010.  (Williams Limine Affirmation ¶ 2)

> B.   Chase's Deletion of Bagley's Email Was Grossly Negligent

Defendant destroyed plaintiff's mailbox with the requisite state of mind.  Chase failed to issue a litigation hold in a timely manner.  "As to culpability, the Second Circuit has stated that a 'case-by-case approach to the failure to produce relevant evidence' is appropriate because '[s]uch failures occur along a continuum of fault ranging from innocence through the degrees of negligence to intentionality."  Kravtsov v. Town of Greenburgh, No. 10 Civ. 3142 (CS), 2012 WL 2719663, at *5 (S.D.N.Y. July 9, 2012) (quoting Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 267 (2d Cir. 1999)).  No showing of bad faith is required for a party to obtain a negative inference charge.  Residential Funding, 306 F.3d at 108.

"'Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.'"  In re NTL, Inc. Sec. Litig., 244 F.R.D. 179, 193 (S.D.N.Y. 2007) (quoting Zubulake I, 220 F.R.D. at 218)).  If defendant had implemented a litigation hold on the date plaintiff was fired or shortly thereafter, it would not have deleted plaintiff's Chase mailbox.  (Pl. 56.1 ¶ 617)  Chase's failure to issue a timely written litigation hold may constitute gross negligence because that failure was likely to, and did, result in the destruction of relevant information.  See Chin v. Port Authority of NY & NJ, 685 F.3d 135, 162 (2d Cir. 2012) (rejecting "the notion that a failure to institute a 'litigation hold' constitutes gross negligence per se, but recognizing that "the failure to adopt good preservation practices is one factor in the determination of whether discovery sanctions should issue") (internal quotation omitted); Chan v. Triple 8 Palace, Inc., No. 03 Civ. 6048, 2005 WL 1925579, at *7  (E.D.N.Y. Aug. 11, 2005)

("[T]he utter failure to establish an form of litigation hold at the outset of litigation is grossly negligent.").

At a minimum, defendant's conduct constituted negligence because it acted intentionally, not accidentally.  Defendant has admitted that it deletes all emails after 15 days and does not maintain back up for its email system.  (Def. Limine Mem. at 3)  Further, defendant admits that plaintiff's emails were destroyed pursuant to this policy.  (Id.)  As the Second Circuit found in Byrnie, "This is evidence of intentional destruction sufficient to show a culpable state of mind on [defendant's] part."  243 F.3d at 109.  "[I]ntentional destruction of documents in the face of a duty to retain those documents is adequate . . . ."  Id.; see Zubulake I, 220 F.R.D. at 221 ("Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent").

C.    Chase Destroyed Emails that are Relevant and Favorable to Plaintiff

In addition, the emails at issue are unquestionably relevant and their destruction has prejudiced plaintiff.  "[A] party seeking sanctions for spoliation must demonstrate that the evidence destroyed was 'relevant' to its claims or defenses."  In re NTL, Inc. Sec. Litig., 244 F.R.D. at 200 (internal quotation marks omitted).  "[T]he party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction."  Residential Funding, 306 F.3d at 108-09.  However, "Courts must not hold the prejudiced party to too strict a standard of proof regarding the likely contents of destroyed evidence because doing so would allow parties who have destroyed evidence to profit from that destruction.'"  See DMAC, 2012 WL 4459290, at *4 (quoting Cedar Petrochemicals, Inc. v. Donghu Hannona Chem Co. Ltd., 769 F. Supp. 2d 269, 290 (S.D.N.Y. 2011)).

Defendant argues without citation that plaintiff cannot meet this requirement because he cannot identify any "specific" email that he believes was relevant to his claim but has been destroyed.  (Def. Limine Mem. at 8 (emphasis added))  Such a showing is not necessary.

"Relevance in this context may be established in two ways.  First, it may be inferred if the spoliator is shown to have a sufficiently culpable state of mind."  Chan, 2005 WL 1925579, at *9-10.  "[A] showing of gross negligence in the destruction . . . will in some circumstances suffice, standing alone, to support a finding that the evidence was unfavorable to the grossly negligent party."  Residential Funding, 306 F.3d at 109.[7]  Accordingly, if the Court finds here that Chase acted grossly negligent for the reasons set forth above, such a finding is sufficient to conclude that the documents defendant destroyed were relevant.

"Second, the moving party may submit extrinsic evidence tending to demonstrate that the missing evidence would have been favorable to it."  Chan, 2005 WL 1925579, at *9-10.  Bagley "may establish relevance by showing that the evidence in the case as a whole suggests that the documents would have helped plaintiff[] support [his] claims."  Golia, 2003 WL 21878788, at *10.  Here, the documents that Chase destroyed were created during the critical time period during which Chase retaliated against Bagley for engaging in protected activity, including firing him.  (Pl. 56.1 ¶¶ 312-580)  It is highly likely that the missing material includes emails that plaintiff sent and received regarding the performance review process and defendant's retaliatory conduct.

In addition, the emails defendant actually preserved and produced to plaintiff, including emails sent before May 3, 2009 and after (from sources other than plaintiff's email inbox), and emails that plaintiff has produced show that the destroyed emails would have been helpful to prove plaintiff's allegations of retaliation.   Contrary to Chase's argument (Def. Limine Mem. at 8; Def. Trial Mem. at 14), the fact that plaintiff did not complain of age discrimination in writing does not end the inquiry.  Several emails and other types of documents that have been

---

[7]        See id. ("Where a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to the party.").

produced show that Bagley believed that the performance review process was discriminatory against the older workers since he repeatedly objected to it as improper and unfair.  (See, e.g., Exhibits 43, 64, 68, 83, 88, 99, 116)[8]  Defendant and plaintiff have produced documents showing that Bagley was fully engaged in the performance review process despite defendant's claims to the contrary.  (See, e.g., Exhibits 34-40, 44-45, 49, 51-52, 54, 56, 58, 62-63)  Also, Chase has produced emails that Carr and Tufano sent to, among others, Bagley, which show that Carr and Tufano were aware of and considered employees' length of tenure in evaluating them during the 2009 mid-year review process.  (See Exhibit 59; see also Exhibit 105)  There can be no serious question that the missing material would have been relevant and its destruction prejudicial.  See In re NTL, Inc. Sec. Litig., 244 F.R.D. at 200 (missing emails "likely would reveal" information that would have been helpful to plaintiff based on emails defendant actually produced); Chan, 2005 WL 1925579, at *9-10 (some evidence of records tending to prove plaintiff's allegations enough to show relevance of other similar records that were destroyed, leading the court to impose an adverse inference); Zubulake v. UBS Warburg LLC ("Zubulake II"), 229 F.R.D. 422, 437 (S.D.N.Y. 2004) (finding that deleted information would have been at least as favorable as emails actually produced).[9]

Defendant argues that Bagley has not been prejudiced because the missing documents are available from other sources.  (Def. Limine Mem. at 8)  Specifically, Chase produced emails sent and received by Bagley from the mailboxes of certain Chase employees during the period May 3 to July 14, 2009.  (Id.)  Chase's argument misses the mark.  While

---

[8]     These exhibits are attached to Plaintiff's Appendix to His Opposition to Defendant's 56.1 Statement.

[9]     Defendant relies (Def. Trial Mem. at 14) on Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68 (S.D.N.Y. 1991), which is inapposite.  In that case, the court refused to give an adverse inference because the plaintiff had failed to present extrinsic evidence showing that the missing documents were relevant.  Id. at 77  Here, in contrast, plaintiff has shown through documents actually produced that the emails defendant destroyed would be favorable to him.

Chase has found some relevant emails, as Chase concedes (Def. Limine Mem. at 8) it certainly has not tried to retrieve all of Bagley's emails created during this period.  (Pl. 56.1 ¶ 625)  See Chan, 2005 WL 1925579, at *9-10 (adverse inference appropriate even though plaintiffs were "able to secure other evidence that provide[d] support for their claims"); Golia, 2003 WL 21878788, at *10 (prejudice where notes destroyed despite production of memo regarding same and chance to take deposition of the author of notes).[10]   Accordingly, an adverse inference against Chase is appropriate.

II.     PLAINTIFF SHOULD BE PERMITTED TO INTRODUCE
        EVIDENCE OF ALLEGED AGE DISCRIMINATION

        A.      Evidence of Age Discrimination Shows that Plaintiff Had
                a Reasonable, Good Faith Basis to Complain of Discrimination

                Defendant erroneously contends that plaintiff should not be permitted to introduce any "evidence regarding purported age discrimination" because plaintiff "does not allege that he was discriminated against on the basis of age."  (Def. Trial Mem. at 10 n.2)  As defendant concedes (Def. Trial Mem. at 10-12), however, evidence of Carr's discriminatory treatment of older workers goes to a required element of Bagley's retaliation claim.  To prevail on a retaliation claim, plaintiff must show that "he had a good faith reasonable belief that the underlying employment practice [that he opposed] was unlawful.'"  Gorzynski v. JetBlue Airways, 596 F.3d 93, 110 n.8 (2d Cir. 2010) (quoting Reed v. A.W. Lawrence & Co., Inc, 95 F.3d 1170, 1178 (2d Cir. 1996); Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 210 (2d Cir. 2006).

_____

[10]     Defendant's reliance (Def. Limine Mem. at 8; Def. Trial Mem. at 14 n.4) on Chin is misplaced.  In that case, the Second Circuit affirmed a decision denying a request for an adverse inference instruction because the information that was destroyed was not central to the case.  Chin, 685 F.3d at 162.  Here, in contrast, it cannot be disputed that plaintiff's email inbox would likely contain important information for this case especially since the materials that Chase destroyed were created during a critical period.  Indeed, an important question in this case is whether plaintiff engaged in protected activity.  While plaintiff has admitted that he never complained about age discrimination in writing, emails he sent could support his allegations that he believed the Carr and Tufano were using the performance review process to target older workers.

"'The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances.'" <u>Rosioreanu v. City of New York</u>, No. 07 Civ. 2925 (LB), 2012 WL 2792893, at *6 (S.D.N.Y. July 9, 2012) (quoting <u>Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.</u>, 136 F.3d 276, 292 (2d Cir. 1998)).

       1.    <u>Carr's Age-Bias Comments</u>

     As this Court found, "Bagley's belief that Carr and Tufano were targeting older employees for termination was informed by age-related remarks made by Carr." (Memorandum Opinion & Order, dated July 12, 2012 (the "Decision"), at 4)  In or around January or February 2009, Tufano conveyed a remark to Bagley that Carr made to him with reference to an email listing the years of service of several members of Bagley's staff, which was "what are you running, an old age home over there?".  (Pl. 56.1 ¶¶ 242-44)   In April 2009, Carr, when discussing a 60 year old woman on Bagley's staff, asked Bagley "wouldn't you like to have a thirty year old with [her] knowledge?".  (<u>Id.</u> ¶¶ 245-46)   On May 13, 2009, Bagley met with Carr, Tufano, and Bagley's peer managers, Marie Gallicchio ("Gallicchio").  During the meeting, Carr asked Gallicchio if she was too old to perform her job; Gallicchio replied that she could run circles around most 30-year olds.  (<u>Id.</u> ¶¶ 247-50)

     A jury could find that Bagley reasonably believed that Carr was discriminating against the older workers based on his age-related remarks.  The Second Circuit has held that similar comments constitute grounds for finding discriminatory animus.  <u>See</u> <u>Gorzynski</u>, 596 F.3d at 98 (finding sufficient evidence of age discrimination where, among other things, a supervisor told an employee that "she reminded him of one of his aunts who was in her eighties"); <u>Danzer v. Norden Sys.</u>, 151 F.3d 50, 53 (2d Cir. 1998) (jury question of discrimination where evidence that plaintiff's supervisor said, "one of the goals for the upcoming year was to get some younger people on board"; "the current staff were . . . a bunch of . . . old fogies"; and "[w]e need new blood-new and younger, fresh skills from out of schools"); <u>Levin v.</u>

Analysis & Technology, Inc., 960 F.2d 314, 315, 217 (2d Cir. 1992) (denying summary judgment where supervisors told employee he "suffered from memory loss" and was "set in his ways"); O'Reilly v. Marina Dodge, Inc., No. 10 Civ. 2977, 2011 WL 1897489, at *4 (S.D.N.Y. May 19, 2011) ("A common stereotype of elderly people is that they resist change and new approaches.  A reasonable jury could find that Marina Dodge's claim that O'Reilly resisted 'new initiatives' was a pretext for Marina Dodge's desire for a younger employee to interact with customers and was based on Marina Dodge's unfounded assumption that a younger (36-year-old) employee would better implement 'new initiatives' than an older (almost-59-year old) employee.").  Certainly, Bagley's knowledge of Carr's age-related remarks are relevant to show that Bagley had a reasonable, good faith belief that Chase was discriminating against older workers.  Indeed, defendant makes no argument to the contrary.  (See Def. Trial Mem. at 10-12)

       2.    Other Evidence of Carr's Age-Bias

       Defendant objects to other evidence of Carr's age discrimination that plaintiff seeks to use during trial.  Specifically, defendant objects to plaintiff's proposed Exhibits 18, 19, 21, and 22.  (Def. Trial Mem. at 11-12)  Proposed Exhibits 18 and 19 are lists of Chase employees who worked in "US Clearing Ops," a division within TSS and WSS, during Carr's tenure in WSS.[11]  Chase produced the lists during discovery. The charts provide, among other information, employee names, whether the employees reported to Carr, their hire date, their discharge date (if applicable), and whether discharge was management initiated.  Defendant produced the charts in response to several document requests and interrogatories, which sought: (1) documents reflecting the organizational and reporting structure within the WSS Custody

---

[11]    As defendant notes (Def. Trial Mem. at 11), proposed Exhibits 18 and 19 are the same chart except that for Exhibit 18, plaintiff has highlighted the names of individuals who reported to Carr, both directly and indirectly.  (Carr Dep. 248:20-249:23; Williams Limine Affirmation, Ex. A))  A copy of proposed Exhibits 18 and 19 are attached as Exhibits B and C to Williams Limine Affirmation.

Physical Processing Unit; (2) documents concerning the composition by age of all WSS employees; (3) documents concerning the decision to terminate the employment of any employees, who reported directly or indirectly to Carr; and (4) the names, titles, and ages of employees who reported, either directly or indirectly, to plaintiff, Tufano, and Carr.[12]   During Carr's deposition, Chase's counsel stipulated and Carr confirmed the information contained in proposed Exhibits 18 and 19 was accurate to the extent the information related to employees who, directly and indirectly, reported to Carr.  (Carr Dep. 256:6-263:12)

Plaintiff created proposed Exhibits 21 and 22 for the purpose of opposing defendant's Motion for Summary Judgment.[13]   Exhibits 21 and 22 are based almost exclusively on information from Exhibits 18 and 19.[14]   Because Exhibits 18 and 19 contain a large amount of information – much of which is not relevant – and are difficult to decipher, Exhibits 21 and 22 summarize the information in these exhibits.  While proposed Exhibits 18 and 19 list employees who did not report to Carr, Exhibits 21 and 22 relate specifically to employees who did report to him either directly or indirectly.

Proposed Exhibits 18, 19, 21, and 22 support plaintiff's good faith belief that Chase was discriminating against older workers.  These exhibits show that Carr consistently targeted employees over the age of 40 for discharge.  (Pl. 56.1 ¶¶ 259-72)  Of the 46 employees

---

[12]    During discovery, defendant provided an index for some of its production.  The index describes proposed Exhibits 18 and 19 (document Bates numbered JPMC 3055-56) as "Employee List – Under Carr."  The index provides that Chase produced the chart in response to plaintif Document Request Nos. 29, 30, 32 and Interrogatory Nos. 2-4.  A copy of "Defendant's Production Index" is attached as Exhibit D and excerpts from plaintiff's document requests and interrogatories are attached as Exhibits E and F to Williams Limine Affirmation.

[13]    Copies of Exhibits 21 and 22 are attached to Williams Limine Affirmation as Exhibits G and H.  As plaintiff has explained to defendant, the versions attached hereto may be modified prior to trial but will remain substantially the same.  Pursuant to the Court's Individual Rules, before trial plaintiff will provide a final version of Exhibits 21 and 22 to the Court and defendant.

[14]    A more detailed explanation regarding how these charts were created is set forth in the Affirmation of Milton L. Williams In Opposition to Defendant's Motion for Summary Judgment ("Williams Summary Judgment Affirmation").  (Williams Limine Affirmation, Ex. A)

dismissed during Carr's tenure, 44 were over the age of 40, including approximately 32 of them who were in their fifties and sixties.  (Id. ¶¶ 260; Carr Dep. 259:23-262:19)  In addition, Carr oversaw a group called ABC Book Entry Settlements Operations ("ABC Book Entry"), which Chase relocated from Brooklyn to Delaware in or around October 2009.  Carr's bias against older employees is highlighted by the change in ages between the ABC Book Entry group pre- and post-migration to Delaware.  (Pl 56.1 ¶¶ 261-72)  Every employee who worked in the Brooklyn version of the group was over 45 years old.  (Id.)  Following the migration to Delaware, all of the employees Chase hired, with one exception, were in their twenties and thirties. (Id.)

Defendant erroneously argues that plaintiff should not be permitted to rely on these statistics because he was unaware of them at the time he complained of age discrimination. (Def. Trial Mem. at 11-12)  While it is true that plaintiff did not have access to these statistics during his employment, the statistics merely corroborate plaintiff's belief that Carr was targeting older workers.  For example, there is no dispute that Bagley's complaints arose from his belief that the performance review process was being used improperly against older employees in his group.  (Def. Trial Mem. at 12; Decision at 5)  The chart titled "Employees Reporting to Robert Bagley at the Time of the 2009 Mid Year Reviews" (Exhibit 21), confirms that Bagley's belief was reasonable and made in good faith.  The chart shows that during Carr's tenure in WSS, Chase fired six employees who had reported to Bagley.  Of those six employees, four of them were over 60 years old and among the oldest employees in Bagley's former group, one was over 50, and the other was over 40.  (Williams Limine Affirmation Ex. H)

Moreover, contrary to defendant's contention (Def. Trial Mem. at 12), plaintiff has alleged that he complained about a "broader 'pattern' of age discrimination" beyond the employees in his group.  In December 2008, Bagley told Tufano that the 2008 year end rankings were discriminatory against the older employees he supervised.  (Pl. 56.1 ¶ 380)  Around the

same time, "Bagley told Tufano that another unit at Chase had terminated several older employees, raising concerns that Chase was discriminating against those employees based on age." (Decision at 7; Pl 56.1 ¶¶ 381-82)  The charts comparing the ages of employees who worked in the ABC Book Entry Settlements Operations before and after the move to Delaware (Exhibit 21), and the charts comparing the ages of employees Chase discharged during Carr's tenure in WSS (Exhibit 22), support Bagley's contention that he had had a reasonable, good faith belief that Carr was targeting the older workers.

The court in <u>Chopra v. General Electric Co.</u>, 527 F. Supp. 2d 230 (D. Conn. 2007), rejected an argument similar to the one defendant raises in its Trial Memorandum.  In that case, following trial, the defendant argued that the court had improperly admitted evidence concerning, <u>inter alia</u>, "(1) ages and races of individuals in defendant [senior management positions]; [and] (2) diversity 'statistics' and the number of minorities and individuals over the age of 40 in senior management positions." <u>Id.</u> at 248.  The defendant argued that such evidence "was prejudicial and confusing because the jury was not reviewing a discrimination case."  The court disagreed, holding that "this evidence was relevant to plaintiff's showing of a 'good faith belief' that the protected activity in which he engaged was covered by the statute." <u>Id.</u>

B.  Evidence of Chase's Discrimination Against
<u>Older Employees Is Admissible to Show Retaliatory Chase's Motive</u>

In addition to showing that Bagley's complaints of age discrimination were made in good faith, a reasonable fact-finder could conclude based on the evidence of age discrimination that defendant had a motive to retaliate.  This Court held in the decision denying summary judgment, "a jury could find Carr's negative remarks about older workers probative on the issue of whether he acted with retaliatory animus" "[g]iven that Carr was allegedly targeting the older workers in Bagley's unit, and that Bagley was objecting to this practice."  (Decision at 22 (citing <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1086 (3d Cir. 1996) ("As we have

recognized, 'an atmosphere of condoned . . . harassment in the workplace increases the likelihood of retaliation for complaints in individual cases.") (internal quotation marks omitted); <u>Terry v. Ashcroft</u>, 336 F.3d 128, 150 (2d Cir. 2003) ("[O]ne type of hostility can exacerbate the [e]ffect of another.  Here hostile racial attitudes could have exacerbated the [e]ffect of retaliation-based . . . hostility and vice versa.").

Like Carr's age-related comments, proposed Exhibits 18, 19, 21 and 22 could show a motive to retaliate against Bagley for his complaints of age discrimination.  Carr played a role in all of the dismissals highlighted by Exhibits 18, 19, 21, and 22.  All of the employees reported to Carr, directly or indirectly, at the time Chase discharged them.  (Carr Dep. 257:17-258:7)  Moreover, all of the dismissals at issue were "management initiated."  (Carr Dep. 259:14-17)  Furthermore, the charts demonstrate that Carr targeted the older workers whom he managed.  (<u>See</u> <u>supra</u> pp. 13-14)  Thus, the charts are probative of retaliatory intent here because they show that Carr had a motive to fire Bagley to cover-up the discriminatory scheme.

C.      Evidence of Age Discrimination Is Relevant to <u>Plaintiff's Punitive Damages Claim Under the City Law</u>

Carr's age related comments and the statistical evidence regarding Carr's termination of Chase employees are also relevant to the jury's consideration of punitive damages.  <u>See</u> <u>Kauffman v. Maxim Healthcare Services, Inc</u>., 509 F. Supp. 2d 210, 214 (E.D.N.Y. 2007) (retaliation claim where court held that a jury "may consider harm to others as evidence of reprehensibility" to demonstrate a different part of the punitive damages constitutional equation); <u>Manzo v. Sovereign Motor Cars, Ltd.</u>, No. 08 Civ. 1229 (JG)(SMG), 2010 WL 1930237 (E.D.N.Y. May 11, 2010) (court states that reprehensibility is a significant factor in determining the appropriateness of punitive damages) the conduct involved repeated actions or was an isolated incident.

The Court in <u>MacMillan v. Millenium Broadway Hotel</u>, No. 09 CIV. 6053

(PGG), 2012 WL 2105832 (S.D.N.Y. June 11, 2012), in considering the reprehensibility of the defendant's conduct, held that cases involving punitive damages awards of "$200,000 or more generally involve discriminatory or retaliatory termination resulting in severe financial vulnerability to plaintiff, repeated incidents of misconduct over a significant period of time, repeated failures to address complaints of discrimination, and/or deceit." Id. at *16. Here, Chase retaliated against Bagley for his complaints of age discrimination against others. The discriminatory scheme lasted more than a year during which time the evidence shows that numerous Chase employees were terminated on the basis of their age. Chase ignored Bagley's good faith complaints to stop targeting the older workers. Chase attempted to disguise the discrimination by justifying the terminations of older workers based on the 20/70/10 and 20/40/10 policies (which they actually did not follow). (Decision at 23-24)

      D.      <u>Plaintiff's Summary Charts Are Admissible Under Fed. R. Evid. 1006</u>

      Defendant incorrectly argues that plaintiff's proposed Exhibits 21 and 22 are not admissible because plaintiff's counsel prepared them. (Def. Trial Mem. at 12) Fed. R. Evid. 1006 provides that a party "may use a summary, chart or calculation to prove the content of voluminous writings, records, or photographs that cannot be conveniently examined in court." Exhibits 21 and 22 satisfy Fed. R. Evid. 1006 because: (1) as set forth above (<u>supra</u> p. 13), the summary charts, Exhibits 21 and 22, are condensed versions of a chart that defendant produced; (2) plaintiff explained in detail how he compiled these charts in the Williams Summary Judgment Affirmation; (3) plaintiff has sought to introduce the underlying documents as evidence, <u>see</u> proposed Exhibits 18 and 19; and (4) plaintiff will make a paralegal available as a witness if defendant would like an opportunity to ask about the preparation of the charts. Moreover, defendant has not contested the accuracy of the summary charts. Accordingly, the Court should permit plaintiff to use Exhibits 21 and 22 at trial. <u>See</u> <u>United States v. Yousef</u>, 327 F.3d 56, 158 (2d Cir. 2003); <u>Malin v. XL Capital Ltd.</u>, 499 F. Supp. 2d 117, 134 (D. Conn. 2007)

("Because the underlying documents are also submitted for consideration, the summaries, tables and charts will not be stricken from the record, however, the summaries will not be considered without reference to underlying documents.").

At a minimum, the Court should defer determining the admissibility of the charts until the court renders a decision regarding "the admissibility of the underlying facts and data that they purport to summarize."  Beechwood Restorative Care Ctr. v. Leeds, 856 F. Supp. 2d 580, 597 (W.D.N.Y. 2012).

<u>CONCLUSION</u>

Based on the foregoing, plaintiff respectfully requests that the Court deny defendant's Motions In Limine.

Dated: New York, New York
       October 10, 2012

VLADECK, WALDMAN, ELIAS &
   ENGELHARD, P.C.

By:    _____s/_____
       Milton L. Williams, Jr.
       Jeremiah Iadevaia
       Attorneys for Plaintiff
       1501 Broadway, Suite 800
       New York, New York  10036
       (212) 403-7300